## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

**SHOBANA SHANKAR, an Individual, and RAGHAVENDRA JAYANTH CHAKRAVARTHY,**

        **Plaintiffs,**

    **v.**

**FAIRVIEW AVENUE PROPERTIES LLC, an Illinois Limited Liability Company, 18350 TORRENCE LLC, an Illinois Limited Liability Company, TCF NATIONAL HOLDINGS, INC., a Delaware Corporation, MON AMI TCF LLC, an Illinois Limited Liability Company, MARCIN CHOJNACKI, an Individual, LAURENA MIKOSZ a/k/a LORI MIKOSZ, an Individual, KATHLEEN LONG, an Individual, CHASE REAL ESTATE, LLC, an Illinois Limited Liability Company, MIDWEST TITLE AND CLOSING SERVICES LLC an Illinois Limited Liability Company, MAINSTREET PROPERTY MANAGEMENT LLC, an Illinois Limited Liability Company, EJ INVESTMENT GROUP INC. a Delaware Corporation, Defendant TORRENCE 2 LLC, an Illinois Limited Liability Company, 2118 BLUE ISLAND LLC, an Illinois Limited Liability Company, 1630 N 1 LLC, an Illinois Limited Liability Company, ILLINOIS ASSETS LLC, a Delaware Limited Liability Company, ANAND SHETH, an Individual, CITYPOINT ILLINOIS LLC, an Illinois Limited Liability Company, ROBERT RIXER, Defendant, an Individual, and Defendant RACHEL IRWIN, an Individual,**

        **Defendants.**

**Case No.**

**Judge:**

**Magistrate:**

## COMPLAINT

NOW COME the Plaintiffs, SHOBANA SHANKAR and RAGHAVENDRA JAYANTH CHAKRAVARTHY, by and through their attorneys, GASPERO & GASPERO, ATTORNEYS AT LAW, P.C., and in complaining against the Defendant MARCIN CHOJNACKI, LAURENA MIKOSZ a/k/a LORI MIKOSZ, KATHLEEN LONG, CHASE REAL ESTATE, LLC, an Illinois Limited Liability Company, MIDWEST TITLE AND CLOSING SERVICES LLC, an Illinois Limited Liability Company, MAINSTREET PROPERTY MANAGEMENT LLC, an Illinois Limited Liability Company, EJ INVESTMENT GROUP INC., a Delaware Corporation, TCF NATIONAL HOLDINGS, INC. , a Delaware Corporation, FAIRVIEW AVENUE PROPERTIES LLC, an Illinois Limited Liability Company, 18350 TORRENCE LLC, an Illinois Limited Liability Company, TORRENCE 2 LLC, an Illinois Limited Liability Company, 2118 BLUE ISLAND LLC, an Illinois Limited Liability Company, 1630 N 1 LLC, an Illinois Limited Liability Company, ILLINOIS ASSETS LLC, a Delaware Limited Liability Company, MON AMI TCF LLC, an Illinois Limited Liability Company, CITYPOINT ILLINOIS LLC, and Illinois Limited Liability Company, ROBERT RIXER, ANAND SHETH, and RACHEL IRWIN, allege as follows:

## JURISDICTION

This Court has jurisdiction over this action pursuant to 28 U.S. Code § 1332(a)(1) whereas the Plaintiffs are citizens of the State of California, and the Defendants are citizens of Illinois and Delaware. The amount in controversy, exclusive of costs, exceeds $75,000.

This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964.

2

## VENUE

Venue is proper in this District pursuant 18 U.S.C. § 1965 and 28 U.S. Code § 1391(c)(2), whereas multiple Defendants are residents of Illinois and the real estate at issue is located in Illinois.

Venue is proper in this District pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this judicial district and reside in this district.

## PARTIES

1.      Plaintiff SHOBANA SHANKAR ("Shankar"), an individual, is a California resident.

2.      Plaintiff RAGHAVENDRA JAYANTH CHAKRAVARTHY, an individual, is a California resident.

3.      Defendant MARCIN CHOJNACKI ("Chojnacki"), an individual, is an Illinois licensed real estate broker and an Illinois resident.

4.      Defendant ROBERT RIXER ("Rixer"), an individual, is an Illinois resident.

5.      Defendant ANAND SHETH ("Sheth"), an individual, is an Illinois resident.

6.      Defendant LAURENA MIKOSZ a/k/a LORI MIKOSZ ("Mikosz"), an individual, is an Illinois licensed real estate broker and an Illinois resident.

7.      Defendant 18350 TORRENCE LLC is an Illinois Limited Liability Company, solely owned and managed by TCF NATIONAL HOLDINGS INC., a Delaware Corporation.

8.      Defendant KATHLEEN LONG, an individual, is an Illinois resident and is the President and "sole member" of TCF NATIONAL HOLDINGS, INC. and, on information and belief, is the paramour of and lives together with Chojnacki.

3

9.     Defendant FAIRVIEW AVENUE PROPERTIES LLC is an Illinois Limited Liability Company, solely owned and managed by MON AMI TCF LLC., an Illinois Limited Liability Company.

10.     Defendant MON AMI TCF LLC is owned and managed by Defendant LONG and Defendant SHETH.

11.     Defendant TORRENCE 2 LLC is an Illinois Limited Liability Company managed and owned by Illinois Assets LLC, a Delaware Limited Liability Company owned and controlled by Defendants CHOJNACKI and RIXER.

12.     Defendant 2118 BLUE ISLAND LLC is an Illinois Limited Liability Company managed and owned by Illinois Assets LLC, a Delaware Limited Liability Company owned and controlled by Defendants CHOJNACKI and RIXER.

13.     Defendant 1630 N 1 LLC is an Illinois Limited Liability Company managed and owned by Illinois Assets LLC, a Delaware Limited Liability Company owned and controlled by Defendants CHOJNACKI and RIXER.

14.     Defendant CHASE REAL ESTATE, LLC ("Chase Real Estate") is an Illinois LLC.

15.     Defendant MIDWEST TITLE AND CLOSING SERVICES LLC ("Midwest Title") is an Illinois Limited Liability Company.  Midwest is managed by XYZABC, Inc., a Delaware Corporation.

16.     Defendant Midwest Title provides real estate transaction services and serves as the registered agent of Defendants 18350 TORRENCE LLC, TORRENCE 2 LLC, 2118 BLUE ISLAND LLC and 1630 N 1 LLC.

17.     Defendant RACHEL IRWIN ("Irwin") is an attorney licensed to practice law in Illinois.  Rachel Irwin is employed by Midwest Title.   Irwin is also the General Counsel and Illinois registered agent of EJ INVESTMENT GROUP INC. and Defendant MAINSTREET PROPERTY MANAGEMENT LLC.  Irwin was also the agent appointed as Power of Attorney on behalf of sellers in the subject transaction.  Irwin is also the President and sole Director of XYZABC, Inc., and the manager of Defendant Midwest Title (above).

18.     Defendant MAINSTREET PROPERTY MANAGEMENT ("Mainstreet Management") is an Illinois Limited Liability Company managed by EJ INVESTMENT GROUP INC. ("EJ Investment Group"). EJ Investment Group is a Delaware Corporation authorized to do business in Illinois.   Defendant CHOJNACKI is the President of EJ Investment Group.

19.     CITIPOINT PROPERTIES appears to have been an un-incorporated enterprise organized by Defendant CHOJNACKI which held itself out as a real estate investment company for the purposes of inducing and capitalizing from out-of-state investors in connection with Illinois real estate.  On December 28, 2022 this un-incorporated enterprise appears to have organized itself as Defendant CITYPOINT ILLINOIS LLC, an Illinois Limited Liability Company ("Citypoint"). The allegations set forth herein cover time periods when this enterprise was both un-incorporated and incorporated.

20.     Defendant LONG is the President and Director of TCF NATIONAL HOLDINGS, INC.

21.     Defendant ROBERT RIXER ("Rixer") is (along with Defendant Chojnacki) one of the two sole members of Defendant Illinois Assets LLC.

22.     Defendants CHOJNACKI and LONG are paramours and reside together.

23.     Defendants IRWIN, CHOJNACKI, MIKOSZ, MAINSTREET MANAGEMENT, AND EJ INVESTMENT GROUP all operate out of the same office space located at 25-41 E. Main Street Suite 204, Roselle, IL 60172.

24.     Defendant ILLINOIS ASSETS (Manager of Defendants TORRENCE 2 LLC, 2118 BLUE ISLAND LLC and 1630 N 1 LLC), XYZABC, Inc. (Manager of Defendant MIDWEST TITLE), and Defendant TCF NATIONAL HOLDINGS (Manager of Defendant 18350 TORRENCE LLC) and the newly formed CITYPOINT ILLINOIS LLC, are all located at 8 The Green Street, Dover, Delaware, 19901.

## ALLEGATIONS COMMON TO ALL COUNTS

25.     Plaintiffs are a married couple residing in California with two children.  Plaintiffs are hardworking and had accumulated savings.  They were seeking to use this savings to invest in real estate to provide a steady source of income to assist with paying for the health care needs of Plaintiff Shankar's aging parents.

26.     In February 2022, Plaintiff Shankar saw a social media advertisement on Facebook, ("The Initial Ad" attached as Exhibit 1) inviting the reader to contact "CitiPoint Properties" which identified itself as a source for connecting investors to undervalued and underperforming "off-market" properties – carrying the promise of rapidly increasing equity and high cash flow.

27.     This alleged connection between the target investor and the alleged owner of "off-market" properties was referred to as an offering of "directly sourced" properties.

28.     The CitiPoint advertisement promising rapidly increasing equity and high cash flow appeared a good solution for Plaintiffs in helping to pay for Plaintiff Shankar's parents' health care needs.

29.     Shankar sent a query to CitiPoint in response to the Facebook advertisement.

30.     Plaintiff Shankar's query to CitiPoint prompted a response from Defendant Mikosz. The response from Mikosz evolved into sustained email, text and phone interactions throughout the spring and summer of 2022 through which Mikosz drew Shankar into the scheme giving rise to this action.

31.     In these email, text and phone interactions, Mikosz told Shankar that she was a real estate broker with Chase Real Estate, which is affiliated with CitiPoint. Mikosz told Shankar that her managing broker was Marcin Chojnacki, who was also a Chase Real Estate agent.

32.     Mikosz actively led Plaintiffs to believe that since she and Chojnacki were agents of Chase Real Estate, and because CitiPoint is affiliated with Chase Real Estate, that the transactions would be safely negotiated and consummated under the auspices of Chase Real Estate.

33.     At all times relevant herein, the website for CitiPoint was a virtual reflection of the website for Chase Real Estate (See printed copy of the CitiPoint website as of January 27, 2023 attached as Exhibit 1 and the Chase Real Estate Website at Exhibit 2 as of February 24, 2023). Both websites were significantly revised prior to and since the attached captures. Prior to the revisions and at the times relevant to the facts alleged herein, the websites were of the same design motif and were virtually identical to each other.

34.     Shankar was assured by Mikosz that if Plaintiffs invested with CitiPoint, they would be directly purchasing buildings that were underperforming because they were owned and self-managed by local landlords. Mikosz described these local landlords as "retiring mom and pops who don't have the energy to handle real estate anymore."

35.     The false promise that the property was owned and self-managed by a local, unprofessional landlord allowed Mikosz to foster the proposition that 1) the property could be acquired from the local individual at a bargain price and 2) once the property was managed properly (with the help of Chojnacki's affiliate property management company, Mainstreet Management), the investor (Plaintiffs) could expect substantial cash flow and rapidly increasing equity.

36.     Contrary to the complex of misrepresentations and calculated omissions of the Defendants, the properties were actually owned by entities controlled by Defendants – acquired just prior to the Plaintiffs' acquisition for significantly less what the Plaintiffs paid.

37.     Plaintiff Shankar entered into five contracts for purchase of Illinois real estate with the Defendants between February and May of 2022, during which time the Defendants successfully misled the Plaintiffs with a complex scheme of fraudulent misrepresentations as to the ownership, condition and the tenancy status of the properties as set forth below.

## I. The Fairview Property

38.     In approximately February of 2022, Mikosz sent Shankar information via email regarding the property located at 12448 Fairview Ave., Blue Island, Illinois (the "Fairview Property").  The Fairview Property is a six-unit apartment building.

39.     Mikosz represented that the Fairview Property was presently owned by a "mom and pop" landlord who were retiring and who didn't have the energy to manage the property anymore.

40.     Mikosz represented that the Fairview Property was in good condition and fully leased with tenants who were all current in their rent.

41.     Mikosz directed Shankar to a CitiPoint Property Information Portal specific to the property that provided a detailed cash flow analysis supporting the proposition that the Fairview Property would be profitable at the purchase price of $450,000. The Portal has since been deleted by the Defendants.

42.     The Property Information Portal represented the property's then-current value as significantly higher than its offer price of $450,000 – thus its purchase at that offered price would be a bargain and would produce immediate equity.

43.     In reality, the value of the property was $300,000. That was the price at which the Defendants had paid the "long-time" owner some three months earlier before turning it around and selling it to Plaintiffs for $450,000 – all without any disclosure.

44.     The Property Information Portal included a rent-roll which affirmatively stated that the property was fully leased and current in rent. The rent-roll was a fabrication of the Defendants. The tenancy of the building was in distress and the rentals were in varying degrees of delinquency and un-collectability.

45.     Mikosz had actual knowledge that the information contained in the CitiPoint Fairview Property Information Portal was false.

46.     Contrary to her representations, Mikosz had actual knowledge that the Fairview Property was not owned by a "mom and pop landlord" but in fact was owned by an entity owned and controlled by Defendants Sheth and Chojnacki's paramour and roommate, Long.

47.     Contrary to her representations, Mikosz had actual knowledge that the Fairview Property was not fully leased with tenants who were all current at the time these representations were made to Shankar.

48.     Contrary to her representations, Mikosz had actual knowledge that Fairview Property was not in good condition, in fact it was in poor condition.

49.     Mikosz continued to describe herself to Plaintiffs as their real estate agent and representative in the transaction.  However, Mikosz actually was an affiliate, was employed by, and/or was an agent of Defendants Chojnacki, Sheth and Long – who secretly owned and/or controlled the selling entity.

50.     Believing Mikosz's misrepresentations, Plaintiff Shankar entered into a contract to purchase the Fairview Property on February 24, 2022. (See Fairview Property Contract attached as Exhibit 3).

51.     On April 28, 2022, the Plaintiffs and the Defendants' Long and Sheth's entity, Fairview Avenue Properties LLC ("Fairview"), closed on the Contract, at which time the Plaintiffs acquired title to the Fairview Property. The purchase price was $450,000.  Fairview had purchased the Fairview Property four months prior for a purchase price of $300,000.

52.     Chase Real Estate Received a Commission of $13,500 at the closing of the transaction.

53.     The Seller was not "an old retiring couple who had owned the building a long time." Fairview Avenue Properties LLC was controlled by directly or indirectly Chojnacki and his affiliate Sheth.

54.     Because of the varying degrees of tenant delinquency and un-collectability of rents, and because of actively concealed building code violations requiring repair in order to allow legal occupancy, Plaintiffs have yet to see any meaningful return for this transaction.

55.     Mikosz continued to send property solicitations to Plaintiffs to purchase additional properties, all with the promise that these properties would bring substantial cash flow.

56.     Plaintiffs responded to emails from Mikosz for four additional properties as follows below.

## II.  The 2118 135th Place, Blue Island Property

57.     Next, Mikosz offered a similar deal on a six unit apartment building at 2118 135th PL. in Blue island (the "135th Place Property").

58.     Mikosz represented that the 135th Place Property was in good condition and fully leased with tenants who were all current in their rent.

59.     Mikosz directed Shankar to a CitiPoint Property Information Portal specific to this property which provided a detailed cash flow analysis supporting the proposition that the 135th Place Property would be profitable at the purchase price of $400,000.

60.     The Property Information Portal represented the property's then-current value as being significantly higher than the target offer price of $400,000 – thus its purchase at that offered price would be a bargain and would produce immediate equity.

61.     In reality, the value of the property was $320,000.  That was the price at which the Defendants had contracted with the "long-time" owner for the purchase of the property before turning it around and contracting to sell it to Plaintiffs for $400,000 – all without any disclosure to the Plaintiffs.

62.     The Property Information Portal included a rent-roll which affirmatively stated that the property was fully leased and "All Current" in rent.  The Rent Roll is attached as Exhibit 4.

63.     The rent-roll was a fabrication by the Defendants.  The tenancy of the building was in distress and the rentals were nearly all in varying degrees of severe delinquency and un-collectability.

64.     Contrary to her representations, Mikosz had actual knowledge that the information contained in the Property Information Portal was false.

65.     Contrary to her representations, Mikosz had actual knowledge that the property was not fully leased and "All Current" at the time these representations were made to Shankar.

66.     Contrary to her representations, Mikosz had actual knowledge that the Property was not in good condition.

67.     Contrary to her representations, Mikosz had actual knowledge that the Property was not owned by a "mom and pop landlord" but in fact was about to be acquired by an entity owned and controlled by Mikosz's employer, Chojnacki and Defendant Robert Rixer for a price that was significantly lower than the price offered to Plaintiffs.  Despite this, Mikosz kept this information secret from Plaintiffs.

68.     Mikosz, Chojnacki and Chase continued to represent Plaintiffs as their real estate agent and representatives in the transaction.  However, Mikosz actually was an affiliate, was employed by, and/or was an agent of Defendants Chojnacki and Rixer – who had clandestinely contracted to buy the 135th Place Property for $80,000 less than what they would fraudulently induce the Plaintiff to offer.

69.     Believing Defendants misrepresentations, Plaintiffs entered into a contract to purchase the 135th Place Property on March 17, 2022.  (See 135th Place Property Contract attached as Exhibit 5).

70. Defendants' ruse was nearly exposed when, on or about April 26, 2022, Shankar learned from her lender that the 135th Place Property title report reflected a recently recorded deed, despite the fact that the seller was supposed to be a "retiring mom and pop who had owned the property for many years."

71. Plaintiff Shankar spoke to Defendant Mikosz who assured Shankar that the old couple were restructuring their assets by transferring their property to an LLC for business and tax purposes, and that the recent transfer was not a sales transaction.

72. The statements 1) that the owners were an old couple, 2) that they were restructuring for tax purposes, and 3) that the transaction was not a sale, were all known falsehoods.

73. On May 19, 2022, the Plaintiffs and Defendants' Chojnacki and Rixer's entity, 2118 Blue Island LLC, closed on the Contract, at which time the Plaintiffs acquired legal title to the Fairview Property. The purchase price was $400,000.

74. Chase Real Estate received a Commission for $13,125 at the closing.

75. The purchase price Defendant 2118 Blue Island LLC paid for the Property on March 28, 2022 (at the sale that Defendants misrepresented as a tax restructure) was $320,000.

76. Because of the varying degrees of tenant delinquency and un-collectability of rents, and because of actively concealed building code violations requiring repair in order to allow legal occupancy, Plaintiffs have yet to see any meaningful return for this transaction.

### III. The Melrose Park Property

77. Plaintiffs responded to Mikosz's solicitations for the real estate known as 1630 N. 1st Ave., Melrose Park, Illinois (the "Melrose Park Property"). The Melrose Park Property is a ten-unit apartment building.

13

78.     Again, Mikosz represented that the Melrose Park Property was owned by a retiring "mom and pop" landlord.

79.     Mikosz represented that the Melrose Park Property was in good condition and fully leased with renters who were current in their rent.

80.     Mikosz directed Shankar to a CitiPoint Property Information Portal specific to that property that provided a detailed cash flow analysis supporting the proposition that the Melrose Park Property would be profitable at the purchase price of $850,000.

81.     On April 22, 2022, Plaintiff downloaded and saved the CitiPoint Melrose Park Property Information Portal prior to its deletion by the Defendants.  It is attached as Exhibit 6.

82.     The Property Information Portal represents the property's then-current value as $1,000,000, thus its purchase at the "Target Purchase Price" of $850,000 would a bargain and would produce immediate equity (See Exhibit 6 Page 2/4).

83.     Defendants' use of the phrase "Target Purchase Price" is intended to mislead the investor to believe that the counterparty in the transaction would be the long-time owner and that Plaintiffs' agents at CitiPoint would negotiate the terms of the final bargain price with the fictitious long-time, retiring old-couple owner.

84.     At the time of the capture of this portal, however, the Defendants had already negotiated to purchase the property themselves for less than the "Target Purchase Price." Therefore, the phrase "Target Purchase Price" is misleading since Defendants had already negotiated to purchase it for themselves for less, did not disclose this to Plaintiffs, and, based on Defendants' recent agreed purchase for themselves, the "Target Purchase Price" would certainly not be a bargain to Plaintiffs.

14

85.     The portal document also states that the "Current seller has been slow and inefficient on rental increases." This reinforces the ruse that the "seller" was the "mom and pop." However, as the Defendants had just negotiated to purchase the property for themselves, the seller in this transaction was actually the Defendants.

86.     In reality, the property was clandestinely acquired by the Defendants from the "mom and pop" and then, nearly immediately thereafter, fraudulently re-sold to the Plaintiffs at a significant markup (in this case $155,000).

87.     The CitiPoint Property Information Portal also included a rent-roll which is attached as Exhibit 7. The rent roll affirmatively states that the property was fully leased and all current in rent.

88.     The rent-roll was a fabrication of the Defendants.  The tenancy of the building was in distress and the rentals were in varying degrees of delinquency and un-collectability.

89.     The Defendants had actual knowledge that the information contained in the Property Information Portal was false.

90.     The Defendants had actual knowledge that the Melrose Park Property was not fully leased at the time these representations were made to Shankar.

91.     Contrary to their representations, Defendants had actual knowledge that the Melrose Park Property was not in good condition.

92.     Contrary to her representations, Mikosz had actual knowledge that the Melrose Park Property was not owned by a "mom and pop landlord" but in fact was about to be acquired by an entity owned and controlled by Mikosz's employer, Chojnacki, along with his affiliate Defendant Robert Rixer.

15

93.     Despite being Plaintiff's agents, Mikosz and Chojnacki kept this information secret from Plaintiffs.

94.     Believing Mikosz's and Chojnacki's misrepresentations, Plaintiffs entered into a contract to purchase the Melrose Park Property on March 28, 2022.  Defendant Mikosz, Chase Real Estate is listed as the "Buyer's designated agent."  (See Melrose Park Property Contract attached as Exhibit 8).

95.     This Contract indicated Chase Real Estate and Lori Mikosz as "Selling Office" and "Buyer's Designated Agent" respectively.

96.     On August 15, 2022, the Plaintiffs and 1630 N 1 LLC closed on the Contract, at which time the Plaintiffs acquired legal title to the Melrose Park Property. The purchase price was $850,000.

97.     Chase Real Estate received a commission of $29,750.

98.     Defendants Chojnacki and Rixer, via the entity 1630 N 1 LLC, had just purchased the Melrose Park Property on July 7, 2022 for only $695,000, just one month before the closing with Plaintiffs.

99.     Because of the varying degrees of tenant delinquency and un-collectability of rents, and because of actively concealed building code violations requiring repair in order to allow legal occupancy, Plaintiffs have yet to see any meaningful return for this transaction.

### IV.  The 18350 Torrence Property

100.    Plaintiffs next responded to Mikosz's solicitations for the real estate known as 18350 Torrence (the "18350 Torrence Property").

101.    As per the ongoing ruse, Mikosz represented that the 18350 Torrence Property was owned by a retiring "mom and pop" landlord.

102.    Mikosz represented that the 18350 Torrence Property was in good condition and fully leased with renters who were current in their rent.

103.    Mikosz directed Shankar to a CitiPoint Property Information Portal specific to that property that provided a detailed cash flow analysis supporting the proposition that the 18350 Torrence Property would be profitable at the purchase price of $550,000.

104.    On June 5, 2022, Plaintiff saved the CitiPoint 18350 Torrence Property Information Portal before it was deleted by the Defendants.  It is attached as Exhibit 9.

105.    The Property Information Portal represents the property's then-current value as $590,000 ("Today's Market Value").  Thus the "Target Purchase Price" of $550,000 would a bargain and would produce immediate equity (See Exhibit 9, Pages 2/6 and 3/6).

106.    The portal document states: "Current seller has been slow and inefficient on rental increases." At the time of this document, however, the actual owner of the property was the Defendant Long, Chojnacki's paramour and co-habitant.

107.    The phrase "Current seller" is calculated to mislead the investor and reinforce the ongoing "mom and pop seller" ruse.

108.    The "Today's Market Value" was a calculated misrepresentation. In reality, the value of the property was $387,000.  That was the price at which the Defendants paid the "long-time" owner three months previously on March 3, 2022.

109.     The 18350 Torrence Property Information Portal further included a rent-roll which affirmatively states that the property was fully leased and all current in rent.  The Rent-Roll is attached as Exhibit 10.

110.     The Rent-roll was a fabrication of the Defendants.  The tenancy of the building was in distress and the rentals were in varying degrees of delinquency and un-collectability.

111.     Contrary to her representations, Mikosz had actual knowledge that the information contained in the CitiPoint Property Information Portal was false.

112.     Contrary to her representations, Mikosz had actual knowledge that the Property was not fully leased at the time these representations were made to Plaintiffs.

113.     Contrary to her representations, Mikosz had actual knowledge that the Property was not in good condition.

114.     Contrary to her representations, Mikosz had actual knowledge that the Property was not owned by a "mom and pop landlord" but in fact was owned by an entity owned and controlled by Mikosz's employer Chojnacki's paramour and co-habitant, Long.

115.     Despite this, Mikosz kept this information secret from Plaintiffs.

116.     Believing Mikosz's misrepresentations, Plaintiffs entered into a contract to purchase the 18350 Torrence Property on March 28, 2022.  Defendant Mikosz, Chase Real Estate, is listed as the "Buyer's designated agent" on the contract.  (See 18350 Torrence Property Contract, attached as Exhibit 11).

117.     On August 10, 2022, the Plaintiffs and Defendant's entity (18350 Torrence LLC) closed on the Contract, at which time the Plaintiffs acquired legal title to the 18350 Torrence Property. The purchase price was $517,500.

118.     Chase Real Estate received a commission of $18,112.50.

119. Contrary to the representations of Defendants, 18350 Torrence LLC purchased the 18350 Torrence Property <u>the same month</u> that it signed the Contract with Plaintiffs. Seller was not "an old retiring couple who had owned the building a long time," contrary to the representations of Defendant Mikosz.

120. The purchase price Defendants paid for the Property was $387,000.

121. Because of the varying degrees of tenant delinquency and un-collectability of rents, and because of actively concealed building code violations requiring repair in order to allow legal occupancy, Plaintiffs have yet to see any meaningful return for this transaction.

## V. The 17909 Torrence Ave. Property

122. Next, Mikosz offered Plaintiffs a similar deal on a six Unit apartment building at 17909 Torrence Ave., Lansing, Illinois (the "17909 Torrence Property").

123. Mikosz represented that the 17909 Torrence Property was in good condition and fully leased with tenants who were current in their rent.

124. Again, Mikosz directed Shankar to a CitiPoint Property Information Portal specific to this property which provided a detailed cash flow analysis supporting the proposition that the 17909 Torrence Property would be profitable at the purchase price of $430,000.

125. The Property Information Portal represented the property's then-current value as being significantly higher than the target offer price of $430,000 – thus its purchase at that offered price would be a bargain and would produce immediate equity.

126. In reality, the value of the property was $360,000. That was the price at which the Defendants had clandestinely contracted with the "long-time" owner before turning it around and contracting to sell it to Plaintiffs for $430,000 – all without any disclosure to the Plaintiffs.

127.    The Property Information Portal included a rent-roll which affirmatively stated that the property was fully leased and "All Current" in rent.  The Rent Roll is attached as Exhibit 12.

128.    The rent-roll was a fabrication of the Defendants.  The tenancy of the building was in distress and the rentals were nearly all in varying degrees of severe delinquency and un-collectability.

129.    Contrary to her representations, Mikosz had actual knowledge that the information contained in the Property Information Portal was false.

130.    Contrary to her representations, Mikosz had actual knowledge that the property was not fully leased and "All Current" at the time these representations were made to Shankar.

131.    Contrary to her representations, Mikosz had actual knowledge that the Property was not in good condition.

132.    Contrary to her representations, Mikosz had actual knowledge that the Property was not owned by a "mom and pop landlord" but in fact was about to be acquired by an entity owned and controlled by Mikosz's employer, Chojnacki and his affiliate Defendant Robert Rixer for a price that was significantly lower than the price offered to Plaintiffs.

133.    Despite this, Mikosz kept this information secret from Plaintiffs.

134.    Mikosz, Chojnacki and Chase continued to represent Plaintiffs as their real estate agent and representative in the transaction.  However, Mikosz actually was an affiliate, was employed by, and/or was an agent of Defendants Chojnacki and Rixer – who had contracted to buy the 17909 Torrence Property for $70,000 less than what they would fraudulently induce the Plaintiff to offer.

135.    Believing Defendants misrepresentations, Plaintiffs entered into a contract to purchase the 17909 Torrence Property on May 9, 2022 Defendant Mikosz, Chase Real Estate, is listed as the "Buyer's designated agent" on the contract. (See 17909 Torrence Property Contract attached as Exhibit 13).

136.    The ruse on this property nearly ended in Defendants being exposed as frauds when, on August 22, 2022 they had to delay the closing.

137.    Specifically, the Defendants had agreed to close the transaction on August 24, 2022.

138.    Without offering a reason, the Defendants reported that they needed an extension.

139.    When the Plaintiff inquired as to the reason from Mikosz, Mikosz delivered the following fabrication:

| | |
|---|---|
| **Shankar:** | **Any update on why closing is getting pushed out to Fri?** |
| **Mikosz:** | **Yes, seller asked very nicely as they have a family health case. Seems like one of the parents is at hospital very bad. He said if kindly can be moved. I told them yes, no problem.** |
| | **They have promised not to move it again. They said its last extension they'd be asking.** |
| **Shankar:** | **Thanks for checking, hope they feel better soon !** |

See the text exchange attached at Exhibit 14.

140.    The statement that the owners had a family "health case" that prevented them from selling the property to the Plaintiff was a complete falsehood. The truth was that on August 22, 2024, the Defendants did not yet have title to the 17909 Torrence property – and were thus prohibited from perfecting the scam on that date.

141.    Plaintiffs, however believed the story about the sick relative and agreed to extend the closing to August 26, 2022.

142.    On August 26, 2022, Torrence 2 LLC (the Defendant Selling Entity) acquired title to the property. The acquisition price was $360,000.  The Defendants closed on the sale of the property with the Plaintiffs that same day for the purchase price of $430,000.

143.    Because of the varying degrees of tenant delinquency and un-collectability of rents, and because of actively concealed building code violations requiring repair in order to allow legal occupancy, Plaintiffs have yet to see any meaningful return for this transaction.

**Factors Common to all of the Properties**

144.    Throughout all the negotiations for the five separate transactions, Mikosz continued to identify herself as Plaintiffs' agent and representative.

145.    Defendant Mikosz continued to represent to Plaintiffs that the counterparties on the five transactions were the long-standing owners of the buildings who were located by CitiPoint to connect them to investors such as Plaintiffs.

146.    In reality, the five properties were owned by or under contract with entities controlled and owned by either Chojnacki and/or his affiliates: his paramour Long and/or Rixer or Sheth.

147.    Mikosz and Chojnacki had actual knowledge that the five properties were not owned by individuals, but were owned by, and thus indirectly owned and/or controlled by either Chojnacki and/or his affiliates.

148.    Mikosz and Chojnacki had actual knowledge the five properties were far from fully leased and fully current in rent.  In fact, the buildings were partially vacant, multiple tenants

were in in the process of eviction, and others were severely in arrears. Nevertheless, they fraudulently misstated the tenancy status through the fabricated rent-rolls.

149.    Mikosz and Chojnacki knew these occupancy representations were untrue not only because Chojnacki and his affiliates controlled the puppet entities that owned the properties, but also because Chojnacki's management company, Main Street Property Management, provided management services for the properties.

150.    Defendant Mikosz and Chojnacki at all times held themselves out to be agents of and acting on the behalf of the Plaintiffs.

151.    At no time did Defendant Mikosz or Chojnacki disclose any conflict of interest.

152.    At all times herein, Irwin was acting as an agent of Defendant Midwest Title and of Fairview Avenue Properties LLC, Torrence 2 LLC, 1630 N 1 LLC, 18350 Torrence LLC and 2118 Blue Island LLC.

153.    Midwest Title and Irwin played a significant role in the transactions by providing registered agent services to the various puppet entities, housing various legal operations appurtenant to the entities and transactions, as well as charging the Plaintiff for some unspecified services described in the closing statement as "Closing Coordination Fee" and provided corroboration for the fiction that the sellers are long-standing owners and not the Defendants.

154.    As stated above, Defendants Irwin, Chojnacki, Mikosz, Rixer, Midwest Title, Mainstreet Management are all located at and operate out of the same office space.

155.    Defendants Chojnacki and Rixer did not disclose that they had a conflict of interest in that they were an owner and/or controller of the 135th Place Property, the Melrose Park Property, and the 17909 Torrence Property.

156.     Defendant Chojnacki did not disclose that he had a conflict of interest in that his roommate and paramour, Long, was an owner and controller of the 18350 Torrence Property and the Fairview Property.

157.     Defendants Mainstreet Management, acting through Defendant Chojnacki and Defendants Fairview Avenue Properties LLC, Torrence 2 LLC, 1630 N 1 LLC, 18350 Torrence LLC and 2118 Blue Island LLC fraudulently misrepresented the condition of and the tenancy status of the properties to the Plaintiffs.

158.     The City of Blue Island had been directing building code violations at the Defendants prior to the transaction.

159.     The City of Melrose Park had been directing building code violations at the Defendants prior to the transaction.

160.     The City of Lansing had been directing building code violations at the Defendants prior to the transaction.

161.     On or about February 2023, Plaintiffs learned that the Defendants did not comply with the Blue Island inspection and real estate transfer requirements as required by Blue Island Ordinances.  On or about February 2023, Plaintiffs learned that Defendant did not comply with Melrose Park and Lansing building code and/or inspection requirements.

162.     Defendants' misrepresentations as to violations and failure to comply with Blue Island real estate transfer inspection and approval requirements and Melrose Park and Lansing building code requirements has resulted in fines and/or citations to Plaintiffs.

163.     Plaintiffs have learned that, due to the tenant nonpayment of rent, it is necessary to proceed with eviction proceedings in Cook County for the subject properties.

164.     For each of the five properties subject to this complaint, the Plaintiffs agreed to have defendant Chojnacki's management company manage the properties after closing.  This part of the scam provided opportunities for the Defendants to engage in post-closing fraudulent activity by:

a)  continued concealment of and falsification of rent records;

b)  continued concealment of building occupancy and code violations;

c)  exorbitant charges for work on the undisclosed violations; and

d)  fabricated billing and/or payments to affiliates for non-existent, incomplete and/or substandard work on the code violations.

165.     Defendants have attempted to induce the Plaintiffs to repeat the scam with additional properties offered by the Defendants. See recent offer attached at Exhibit 15.

166.     Defendants have treated other individuals or entities in the same illegal manner alleged by the Plaintiffs.  There are four known specific additional individuals and/or entities who were similarly defrauded by precisely or nearly precisely the same pattern of artifices and fraudulent misrepresentations as set forth in this Complaint.

167.     The Defendants are, at present, continuing to lure investors into the enterprise using the same scheme and under the same guises as those set forth herein. Accordingly, the conduct alleged herein constitutes the Defendants' regular method of conducting their business.

## COUNT I:  RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT (RICO) - 18 U.S.C. 1962(c), (d)

**(Defendants Chojnacki, Mikosz, Long, Fairview Avenue Properties LLC, Torrence 2 LLC, 1630 N 1 LLC, 18350 Torrence LLC, 2118 Blue Island LLC, Citypoint Illinois, LLC, Mainstreet Property Management, LLC, TCF National Holdings, Inc., Mon Ami TCF LLC, Citypoint Illinois LLC, and Illinois Assets LLC**

Plaintiffs Shankar and Chakravarthy re-state and re-allege Paragraphs 1 through 167 as though fully stated herein.

### RICO Persons

168.    Defendants Chojnacki, Mikosz, Long, Citypoint Illinois LLC, Fairview Avenue Properties LLC, Torrence 2 LLC, 1630 N 1 LLC, 18350 Torrence LLC, 2118 Blue Island LLC, Citypoint Illinois LLC, Mainstreet Property Management, LLC, Mon Ami TCF LLC, TCF National Holdings, Inc., and Illinois Assets LLC, are each capable of holding a legal or beneficial interest in property, and therefore each is a "person" within the meaning of 18 U.S.C. § 1961(3).

### The Rico Enterprise

169.    Defendants Chojnacki, Mikosz, Long, Rixer, Fairview Avenue Properties LLC, Torrence 2 LLC, 1630 N 1 LLC, 18350 Torrence LLC, 2118 Blue Island LLC, Citypoint Illinois LLC, Mainstreet Property Management, LLC, Mon Ami TCF LLC, TCF National Holdings, Inc., and Illinois Assets LLC, were associated in fact, and constituted an "enterprise" as that term is defined in Title 18, United States Code, Section 1961(4), which enterprise was engaged in, and the activities of which affected, interstate commerce. This enterprise shall be referred to herein as the "CitiPoint Enterprise."

170.    The CitiPoint Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

171.    The primary purpose of the CitiPoint Enterprise was to lure and then fleece unsuspecting real estate investors for the financial benefit of CitiPoint.

172.    For the purpose of 18 U.S.C. § 1962(c), and during the periods relevant to this complaint, Defendants Chojnacki and Mikosz each had authority within the CitiPoint Enterprise, and/or conducted or participated, directly or indirectly, in the conduct of the CitiPoint Enterprise's affairs through the pattern of racketeering activity described herein.

## Effect on Interstate Commerce

173.    The CitiPoint Enterprise conducted its racketeering activity, in part, using the interstate mails and wire communications, including by use of the telephones, by electronic transfers of funds, by internet communications, and through the mailing of checks.

## Predicate Acts of Racketeering Activity

174.    Through the CitiPoint Enterprise, or in conspiracy with it, the Defendants conducted, engaged in, and participated in a pattern of racketeering activity, consisting, at a minimum, of the following predicate acts: (a) multiple violations of Title 18, United State Code, Sections § 1341, 1343, and 1346 (mail fraud and wire fraud).  The scheme to defraud was advanced, concealed or furthered by the use of the U.S. mail or wires.

175.    Specifically, the Defendants' predicate acts include, but are not limited to, the following:

  a) In furtherance of a scheme or artifice to defraud as defined in 18 U.S.C. §§ 1341 & 1346, and with specific intent to defraud, Defendants placed ads on the Internet and on social media with the

27

intent to induce investors to participate in "directly sourced" real estate opportunities when they actually intended to sell the duped investor their own significantly marked-up property.

b) Engaging in a sustained fiction with the victim, replete with misrepresentations and calculated omissions to keep the investor misled that their transactional counterparty was an "old retiring couple" selling the property directly to the investor at bargain level pricing.

c) Fabricating occupancy records of the property to mislead the investor with the falsehood that that property was fully-leased and the tenant payments were fully current.

d) Concealing and misrepresenting known significant building code and occupancy violations from the investor with the intent of inducing the investor to enter into the transaction.

e) Engaging in post-closing fraudulent activity in the management of the property by 1) continued concealment of and falsification of rent records; 2) continued concealment of building occupancy and code violations; 3) exorbitant charges for work on the undisclosed violations; and 4) fabricated billing and/or payments to affiliates for non-existent, incomplete and/or substandard work on the code violations.

## Pattern of Racketeering Activity

176.    The Defendants acted, and conspired to act together, and in association with others knowingly and repeatedly committed the above fraudulent acts in furtherance of and for the purpose of enriching themselves financially and to otherwise further the ends of the CitiPoint Enterprise.

177.    The predicate acts described above were related to one another as part of a common scheme or plan.

178.    Such unlawful conduct constituted a continuous pattern of racketeering activity beginning as early as February 2022, continue through the present, and are likely to continue into the foreseeable future.

## Conspiracy (18 U.S.C. § 1962(d))

### (Defendants Midwest Title and Closing Services LLC, Irwin, EJ Investment Group Inc., Chase Real Estate, LLC, Sheth and Rixer)

179.    As described above, Defendants Midwest Title and Closing Services LLC, Irwin, EJ Investment Group Inc., Chase Real Estate, LLC, Sheth and Rixer did knowingly agree to facilitate the CitiPoint Enterprise Defendants, and those acting in concert with them, to violate 18 U.S.C. § 1962(c) for the purpose of achieving and profiting from the racketeering activities described above.

180.    In furtherance of that agreement, the Defendants knowingly and intentionally agreed and conspired to commit at least two of the predicate acts set forth above and they did so with the knowledge and intent that such acts were in furtherance of the foregoing pattern of racketeering.

181.    Specifically, the Defendants described herein were either affiliated or controlled by the CitiPoint Enterprise Defendants

182.    The Defendants described herein knowingly provided auxiliary services with respect to the marketing, negotiation, and transaction of real estate closing services which were necessary to and facilitated the accomplishment of the goals of the CitiPoint Enterprise.

183.    Defendant Chase Real Estate LLC provided the cover of a legitimate real estate brokerage enterprise, oversaw the conduct and behavior of Mikosz and Chojnacki, and received a commission from Fairview Avenue Properties LLC, Torrence 2 LLC, 1630 N 1 LLC, 18350 Torrence LLC, 2118 Blue Island LLC (the sellers) notwithstanding the fact that at all relevant times herein, they held themselves out as Plaintiffs' agent.

184.    Defendant Irwin is forming at least some of the layers of shell entities, providing misinformation about the real estate, executing deeds, acting as officer and/or principal for the

enterprise's entities, and acting as their counsel in the negotiations and transactions wherein the real estate is conveyed to the investor, or in this matter, acts as counsel for the fictitious old retiring couple.

### Injuries to the Plaintiff Business and Property

185.    As a direct and proximate cause of the described racketeering activities and violations of 18 U.S.C. § 1962(c), and the described conspiracy in violation of 18 U.S.C. § 1962(d), the Plaintiffs have been injured in their business and property. The Defendants' racketeering activities caused the Plaintiffs to invest $2.6 million in real estate which the Defendants had actual knowledge was worth far less and said racketeering activities directly resulted and were the proximate cause of the Plaintiffs' loss of invested funds.

186.    The Defendants' racketeering activities further caused the Plaintiffs' substantial damages due to the fact that the Properties were either not certified for occupancy and thus un-rentable due to multiple severe violations of municipal occupancy and code violations that were known and hidden from the Plaintiffs or requiring significant repairs at a substantial expense to Plaintiffs.

187.    The Defendants racketeering activities further caused the Plaintiffs' substantial damages due to the fact that numerous tenants in the Properties were not paying rent and eviction proceedings were necessary.

188.    These injuries were a foreseeable consequence of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), and their conspiracy in furtherance of those racketeering violations, in violation of 18 U.S.C. § 1962(d).

**WHEREFORE**, Plaintiffs respectfully request the Court to enter judgment in their favor and against each of the CitiPoint Enterprise Defendants and their conspirators and order the following relief:

      (a) All damages proven pursuant to RICO, trebled as permitted by law;

      (b) Punitive damages, attorney fees, and costs as permitted by law; and

      (c) Such other and further relief as the Court may deem just and appropriate.

### COUNT II: COMMON LAW FRAUD

189. Plaintiffs restate Paragraphs 1 through 189 as if fully set forth herein.

190. Defendant Mikosz and Chojnacki's statements set forth above concerning the Properties, their condition, and their leased status were false statements of material fact.

191. Defendants Mikosz and Chojnacki made the statements with knowledge that they were false.

192. Defendants Mikosz and Chojnacki made the false statements with the intention to induce the Plaintiffs to purchase the Property under falsified premises.

193. Plaintiffs reasonably and justifiably relied on the said Defendants' false statements.

194. The Plaintiffs suffered damages due to reliance on the false statements.

195. The said Defendants made the false representations as agents of the affiliated corporate defendants as set forth herein.

196. Accordingly, the Defendants' statements, Plaintiffs' reliance thereon, and resulting damages constitute common law fraud.

WHEREFORE, Plaintiffs, Shobana Shankar and Raghavendra Jayanth Chakravarthy, pray that this Honorable Court enter judgment in their favor and against Defendants in an

31

amount in excess of the jurisdictional limit of Seventy-Five Thousand Dollars ($75,000.00), plus their costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.

**COUNT III: BREACH OF CONTRACT –**
**FALSE REPRESENTATIONS AS TO BUILDING CODE VIOLATIONS**

197. Plaintiffs re-state Paragraphs 1 through 196 above as if fully set forth herein.

198. Paragraph 10 of the Contracts between the Plaintiffs and Defendants Fairview Avenue Properties LLC, Torrence 2 LLC, 1630 N 1 LLC, 18350 Torrence LLC and 2118 Blue Island LLC, provides the following representation: "Seller represents that Seller has not received written notice from any governmental body or owner association regarding (a) zoning, building, fire or health code violations that have not been corrected…"

199. Defendants had been in receipt of notices and had actual knowledge of multiple significant building and health code violations that had not been corrected at the time of the contract and at the time of the closing.

200. The Contract between the parties was a valid and enforceable contract.

201. The Plaintiffs performed all of their obligations pursuant to the terms of the Contract.

202. The Defendants breached the contract by misleading statements and or omissions concerning the representations required by Paragraph 10 resulting in significant damages to the Plaintiffs.

WHEREFORE, Plaintiffs, Shobana Shankar and Raghavendra Jayanth Chakravarthy, pray that this Honorable Court enter judgment in their favor and against Defendants in an amount in excess of the jurisdictional limit of Seventy-Five Thousand Dollars ($75,000.00), plus their costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.

**COUNT IV: BREACH OF CONTRACT – FALSIFIED RENT-ROLL**

203.     Plaintiffs re-state Paragraphs 1 through 202 above as if fully set forth herein.

204.     Paragraph 11 of the Contract between the Plaintiffs and Defendants Fairview Avenue Properties LLC, Torrence 2 LLC, 1630 N 1 LLC, 18350 Torrence LLC and 2118 Blue Island LLC,  provides the following contractual obligation on the part of the Seller: "Seller is required to deliver assignments of leases and Rent Roll to Buyer at the time of closing." (Lines 163-164).

205.     In each transaction, the Sellers provided documents purporting to be rent rolls that were materially and knowingly falsified.

206.     Significantly, the falsified rent rolls provided that the properties were fully leased, and all units were current in payment status when in fact there were vacant units; severely delinquent tenants, and tenants in the process of being evicted.

207.     The duty under the Contracts to provide a rent roll implies that the rent roll tendered will be free from material inaccuracies and known falsehoods.

208.     The Contract between the parties was a valid and enforceable contract.

209.     The Plaintiffs performed all of their obligations pursuant to the terms of the Contract.

210.     The Defendants breached the Contract by providing a document purporting to be a rent roll that was significantly, materially and knowingly falsified.

WHEREFORE, Plaintiffs, Shobana Shankar and Raghavendra Jayanth Chakravarthy, pray that this Honorable Court enter judgment in their favor and against Defendants in an amount in excess of the jurisdictional limit of Seventy-Five Thousand Dollars ($75,000.00), plus their costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.

## COUNT IV: VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (CONSUMER FRAUD ACT)

211.    Plaintiffs re-state Paragraphs 1 through 210 above as if fully set forth herein.

212.    Defendants Mikosz and Chojnacki's statements, including but not limited to their statements set forth above concerning the Property, its condition, and its leased status were false statements of material fact and constituted a deceptive act or practice by the said Defendants.

213.    Defendants Mikosz and Chojnacki intended that the Plaintiffs rely on the deception.

214.    The occurrence of the deception was in the course of conduct involving trade and commerce.

215.    The deceptions were originated by residents of Illinois, concern Illinois real estate, and have resulted in violations of Illinois municipal laws.  Accordingly, the conduct alleged herein directly and indirectly affect the State of Illinois.

216.    The deception was the proximate cause of actual damage to the Plaintiffs.

217.    The said Defendants made the false representations as agents of the affiliated corporate defendants as set forth herein.

218.    Accordingly, the conduct of deception perpetrated by Defendants Mikosz Chojnacki, Long and Irwin constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

WHEREFORE, Plaintiffs, Shobana Shankar and Raghavendra Jayanth Chakravarthy, pray that this Honorable Court enter judgment in their favor and against Defendants in an amount in excess of the jurisdictional limit of Seventy-Five Thousand Dollars ($75,000.00), plus their costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.

## COUNT V: VIOLATION OF THE ILLINOIS REAL ESTATE LICENSE ACT

219.     Plaintiffs re-state Paragraphs 1 through 218 above as if fully set forth herein.

220.     Defendants Micosz and Chojnacki provided real estate services in this transaction as agents of Chase Real Estate LLC.

221.     Defendants Mikosz, Chojnacki and Chase Real Estate LLC were "Licensees" under the Real Estate License Act, 225 ILCS 454/1-1 *et seq.*

222.     Section 15-25 of the Real Estate License Act mandates that:

> Licensees shall treat all customers honestly and shall not negligently or knowingly give them false information.

223.     Section 15-5 of the Real Estate License Act specifies that:

> This Article 15 may serve as a basis for private rights of action and defenses by sellers, buyers, landlords, tenants, real estate brokers, and real estate salespersons.

224.     Defendants Mikosz, Chojnacki and Chase Real Estate LLC breached the requirements of the Real Estate License Act by committing the following actions:

a)   fraudulently misrepresenting that they represented the Plaintiffs as buyer when in actuality they represented, were affiliates of and/or were direct agents of the seller;

b)   fraudulently misstating the condition of the Property;

c)   fraudulently misstating the tenancy of the Property;

d)   fraudulent falsification of the purported rent roll;

e)   fraudulently misrepresenting to the Plaintiffs that the seller in the transaction was a directly sourced, off-market seller when in truth the Seller was comprised of, directly affiliated with or controlled by the Defendants themselves or were agents thereof;

225.     Plaintiffs relied on Defendants Mikosz, Chojnacki and Chase Real Estate LLC's statements and suffered damages therefrom.

WHEREFORE, Plaintiffs, Shobana Shankar and Raghavendra Jayanth Chakravarthy, pray that this Honorable Court enter judgment in their favor and against Defendants in an amount in excess of the jurisdictional limit of Seventy-Five Thousand Dollars ($75,000.00), plus their costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.

## COUNT VI:  NEGLIGENT MISREPRESENTATION

226.     Plaintiffs re-state Paragraphs 1 through 226 above as if fully set forth herein.

227.     Defendants Mikosz and Chojnacki's statements, including but not limited to their statements set forth above concerning the Property, its condition, and its leased status were false statements of material fact.

228.     Defendants Mikosz and Chojnacki made the false statements through carelessness or negligence in ascertaining the truth of the statement by the party making it.

229.     Defendants Mikosz and Chojnacki' false statements were made with intention to induce the Plaintiffs to act.

230.     The Plaintiff's actions in consummating the transaction were in reliance on the false statements.

231.     Plaintiff's reliance was the proximate cause of damage to the Plaintiffs.

232.     The said Defendants made the false representations as agents of the affiliated corporate defendants as set forth herein.

233.     Defendants Mikosz and Chojnacki's statements therefore constitute Negligent Representation.

WHEREFORE, Plaintiffs, Shobana Shankar and Raghavendra Jayanth Chakravarthy, pray that this Honorable Court enter judgment in their favor and against DEFENDANTS in an

amount in excess of the jurisdictional limit of Seventy-Five Thousand Dollars ($75,000.00), plus their costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.


Respectfully Submitted,

/s/Carmen Gaspero

_____

/s/Lisa Gaspero

_____

All Plaintiffs
By: Their Counsel


Gaspero & Gaspero
Attorneys at Law, P.C.
Carmen A. Gaspero
Lisa M. Gaspero
2001 Butterfield Rd., Suite 1022
Downers Grove, Illinois 60515
630-687-9700